1    ELAINE T. BYSZEWSKI (SBN 222304)
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
2    301 North Lake Avenue, Suite 203
     Pasadena, CA 91101
3    Telephone: (213) 330-7150
     Facsimile: (213) 330-7152
4    E-mail: elaine@hbsslaw.com

5    STEVE W. BERMAN*
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
6    1918 8th Avenue, Suite 3300
     Seattle, WA 98101
7    Telephone: (206) 623-7292
     Facsimile: (206) 623-0594
8    Email: steve@hbsslaw.com

9    ADAM J. LEVITT*
     **GRANT & EISENHOFER P.A.**
10   30 North LaSalle Street, Suite 1200
     Chicago, IL 60602
11   Telephone: (312) 214-0000
     Facsimile: (312) 214-0001
12   Email: alevitt@gelaw.com

13   *Pro Hac Vice admission pending

14   [Additional Counsel Listed on Signature Page]

15   Attorneys for Plaintiff and the Proposed Classes

16

17            UNITED STATES DISTRICT COURT

18            CENTRAL DISTRICT OF CALIFORNIA

19   THE CENTER FOR DEFENSIVE
     DRIVING,                No. CV13- 5068PSH(MANx)

20

21                Plaintiff,     **CLASS ACTION COMPLAINT**

22      v.

23   FORD MOTOR COMPANY,       (Jury Trial Demanded)

24               Defendant.

25

26

27

28

010388-11 625188 V1

1

# TABLE OF CONTENTS

2

**Page**

3  I.      INTRODUCTION ...................................................................................... 1

4  II.     JURISDICTION ....................................................................................... 2

5  III.    VENUE ..................................................................................................... 3

6  IV.     PARTIES .................................................................................................. 3

7          A.    Plaintiff ......................................................................................... 3

8          B.    Defendant ..................................................................................... 5

9  V.      FACTUAL ALLEGATIONS ................................................................... 5

10         A.    Introduction of MyFord Touch ................................................... 5

11         B.    Description of MyFord Touch ..................................................... 7

12         C.    MyFord Touch Has Been Plagued with Serious Defects ..................... 11

13         D.    The TSBs and Warranty Extension ............................................ 12

14         E.    Similar Experiences and Complaints by Consumers ............................ 16

15         F.    Fallout From the MyFord Touch Problems ................................ 22

16 VI.     CLASS ALLEGATIONS ....................................................................... 24

17 VII.    CLAIMS FOR RELIEF .......................................................................... 27

18         A.    Claims Brought on Behalf of the Nationwide Class ........................... 27

19         COUNT I:  (VIOLATION OF MAGNUSON-MOSS WARRANTY
20         ACT) ....................................................................................................... 27

21         COUNT II:  (BREACH OF EXPRESS WARRANTY) ................................. 29

22         COUNT III:  (BREACH OF IMPLIED WARRANTY OF FITNESS
           FOR A PARTICULAR PURPOSE) ........................................................ 30

23         COUNT IV:  (BREACH OF IMPLIED WARRANTY OF
24         MERCHANTABILITY) ......................................................................... 31

25         B.    Claims Brought on Behalf of the California Class ................................ 32

           COUNT V:  (VIOLATION OF CALIFORNIA UNFAIR COMPETITION
26         LAW) ...................................................................................................... 32

27         COUNT VI:  (VIOLATION OF CALIFORNIA CONSUMERS LEGAL
           REMEDIES ACT) .................................................................................. 34

28

---

CLASS ACTION COMPLAINT - i

VIII.   REQUEST FOR RELIEF.................................................................................. 36

IX.     JURY TRIAL DEMAND................................................................................ 36

010388-11 625188 V1

Plaintiff, The Center for Defensive Driving, individually, and on behalf of all others similarly situated, alleges as its Complaint and Demand for Jury Trial, the following:

## I.    INTRODUCTION

1.    Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Ford, Lincoln and Mercury vehicles equipped with a "MyFord Touch," "MyLincoln Touch," or "MyMercury Touch" system[1] ("Class Vehicles").  Plaintiff seeks damages and equitable relief for Defendant Ford Motor Company's ("Ford") conduct as alleged in this Complaint.

2.    Ford introduced MyFord Touch in certain of its vehicles beginning with model year 2011.  As used herein, MyFord Touch consists of three Liquid Crystal Display (LCD) interfaces that are powered by Ford "SYNC," an operating system that was designed by Microsoft.  MyFord Touch allows the vehicle owner to, among other things, operate the audio systems in the vehicle, use the GPS navigation technology, control the climate systems in the vehicle, and operate a Bluetooth enabled mobile telephone or mobile device.  In addition to operating these various functions, MyFord Touch is also responsible for operating certain safety systems in the vehicle.  For example, when the system detects that the vehicle has been involved in a collision, the system will dial 9-1-1 and connect the vehicle to an emergency services provider.

3.    Ford has touted MyFord Touch as a revolutionary feature in its vehicles, a feature for which it charges a significant premium.  However, since its launch in 2011, the system has been an unmitigated disaster for Ford.  Indeed, the Internet is replete with complaints from Ford owners who have experienced significant problems with the system.  Many vehicle owners complain that, among other things, the system freezes up, stops working, the screen "blacks out," the system fails to

---

[1]    In this complaint, MyFord Touch, MyLincoln Touch, and MyMercury Touch will be collectively referred to as "MyFord Touch."

010388-11  625188 V1

respond to touch commands, and fails to connect to the user's mobile phone. Simply stated, the system fails to work as intended or as promised by Ford.

4. Ford's customers are not the only ones who recognize that the system has been a failure. Shortly after the launch of the system in 2011, Ford's CEO, Alan Mulally, in numerous interviews, admitted that MyFord Touch suffers from numerous problems. Ford has also recognized that it has a problem insofar as it has issued three purported "updates" which it claimed corrected the issues plaguing the system. However, none of these updates have corrected the issues that the Plaintiff and the other Class members have experienced with their MyFord Touch systems. Indeed, according to Ford's own technical support team, there is no fix for the problems experienced by Plaintiff and the other Class members.

5. As a result of Ford's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose defects in the MyFord Touch system, owners and/or lessees of the Class Vehicles have suffered losses in money and/or property.

6. Had Plaintiff and the other Class members known of the defects in the MyFord Touch system at the time they purchased or leased their vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

7. Plaintiff, individually and on behalf of the other members of the proposed Class, brings this action for Defendant's statutory and common law violations, including its violation of applicable consumer protection and deceptive trade practice statutes and Defendant's breaches of its warranties to Plaintiff and the other Class members.

## II. JURISDICTION

8. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) because the proposed class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and

interest; and minimal diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

9.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Plaintiff, The Center for Defensive Driving, leased a Class Vehicle in this District, and Ford has marketed, advertised, sold, and leased the Class Vehicles within this District.

## IV.   PARTIES

**A.    Plaintiff**

10.     The Center for Defensive Driving ("CDD") is a 501(c)(3) nonprofit corporation headquartered in Torrance, California.  On or about February 22, 2013, CDD acquired a 2013 Ford F-150 Lariat equipped with a MyFord Touch system (VIN# 1FTFW1ETXDFB37760), which it leased from Power Ford, an authorized Ford dealership located in Torrance, California.  Unknown to CDD at that time was that the MyFord Touch system in its F-150 Lariat is defective and suffers from numerous issues including:  system lockup and total system failure; periodic non-responsiveness to peripheral devices (such as MP3 players and smartphones); and periodic non-responsiveness to voice commands.  Indeed, between February 22, 2013 and July 1, 2013, Plaintiff's MyFord Touch unit has failed or locked up on no fewer than 27 separate occasions.  Defendant Ford knew about, but did not disclose, the defect to Plaintiff CDD and it leased its F-150 Lariat under the reasonable but mistaken belief that the MyFord Touch system would perform in a reasonable manner.  It did not.

11.     At Power Ford, prior to agreeing to lease the F-150 Lariat, Plaintiff inquired about the functionality and quality of the MyFord Touch system installed in the vehicle.  A Ford sales representative, Roland Belikow, represented to Plaintiff

that the MyFord Touch system works well, can play audio from MP3 players, including Plaintiff's Apple iPod, and connect with smartphone devices, including Apple iPhones, for hands-free telephone usage as well as audio and other entertainment functions.  Mr. Belikow demonstrated for Plaintiff the navigation capabilities of the MyFord Touch system as well as the voice command functions. At no time did Mr. Belikow or any other Ford representative disclose that the MyFord Touch system is in any way defective.

12.     Plaintiff contacted Ford technical support (using the Ford Sync hotline) on numerous occasions shortly after leasing the F-150 Lariat to report and correct the problems it was experiencing.  Ford technical support advised Plaintiff to do a "master reset" on the Sync System, which temporarily corrected the issues experienced.  However, the same issues would recur, generally within one to five days, after performing a "master reset."

13.     At the suggestion of Ford technical support, Plaintiff brought the F-150 Lariat to the Power Ford dealership for service.  The technicians at the dealership confirmed that the F-150 Lariat was equipped with the latest software updates and advised Plaintiff to disconnect any peripheral devices if the system fails in the future. The system continued to fail, with and without peripheral devices attached to it, and Plaintiff spoke with several further Ford technical support representatives.

14.     On March 26, 2013, Plaintiff spoke with a Ford representative who identified himself as "Brent."  Brent advised Plaintiff to connect peripherals to the auxiliary jack rather than the Sync System, which would lead to distracted driving if a phone call were received.  Brent admitted to Plaintiff that there is no fix for the problems experienced by Plaintiff.

15.     As the problems persisted, Plaintiff initiated a "buyback request" with Ford (according to which Ford would reacquire the F-150 Lariat and issue Plaintiff a refund) on April 10, 2013.  On May 2, 2013, Ford denied Plaintiff's buyback request.

010388-11  625188 V1

16.     After several more weeks of identical problems, Plaintiff spoke with Ford Consumer Affairs on June 19, 2013.  A Ford Consumer Affairs representative that identified himself as "Mark" informed Plaintiff that Plaintiff should visit the Sync website to deal with peripheral device compatibility issues, and denied that Sync was experiencing system-wide problems.  Mark advised Plaintiff that his problems were related not to the Sync System but to Plaintiff's peripheral devices, and that Plaintiff's problems were isolated, not a result of a defect in the Sync System.

## B.     Defendant

17.     Ford Motor Company is a corporation doing business in all fifty states (including the District of Columbia) and is organized under the laws of the State of Delaware, with its principal place of business in Dearborn, Michigan.  At all times relevant to this action, Ford manufactured, sold, leased, and purportedly warranted, under the Ford, Lincoln, and Mercury brand names, the Class Vehicles at issue throughout the United States.  Defendant Ford designed, manufactured, and installed the defective MyFord Touch systems in the Class Vehicles.  Defendant Ford also develops and disseminates the owner's manuals, and warranty booklets relating to the Class Vehicles.

## V.     FACTUAL ALLEGATIONS

## A.     Introduction of MyFord Touch

18.     In January 2010, Ford announced the roll-out of MyFord Touch.[2]  It hailed MyFord Touch as an "intuitive driver experience."[3]  The launch of MyFord Touch was also promoted by Ford as a significant reason to purchase a Ford vehicle.

---

[2]     http://www.zdnet.com/blog/gadgetreviews/ford-announces-myford-touch-with-dual-4-2-lcds-wi-fi-and-improved-voice-recognition/10838.

[3]     http://www.zdnet.com/blog/gadgetreviews/ford-announces-myford-touch-with-dual-4-2-lcds-wi-fi-and-improved-voice-recognition/10838.

19.    At the launch of MyFord Touch in January 2010, Ford's CEO, Alan Mulally said, referring to MyFord Touch, "***this is a reason to buy Ford*** . . . It's just smart design.  We think it's a value proposition."[4]  Ford and the consumer community viewed MyFord Touch as bearing such significance that Ford CEO Mulally delivered the keynote address at the Annual Consumer Electronics show in 2010 in Las Vegas specifically to unveil MyFord Touch.

20.    With MyFord Touch, Ford aimed to create a technological infotainment system that would be available not only on its higher-end vehicles, but would become the signature feature of all Ford vehicles.

21.    At the time MyFord Touch was announced by Ford, Ford's Vice President for Group Product Development stated, "[d]emocratization of technology is a key aspect of our product plan . . . With [MyFord Touch], we didn't want to create an upscale electronics package and just put it on our highest-end vehicles. This technology will be available across our full range of vehicles: From our affordable small cars to the ultimate Lincoln, we're going to make a premium, appealing and intuitive experience available to everyone."[5]

22.    While the roll-out of MyFord Touch was scheduled to begin in 2010 on only a limited number of Ford vehicles, when it announced the launch of MyFord Touch, Ford stated that by 2015, at least 80% of Ford vehicles would be equipped with MyFord Touch.[6]

---

[4]    http://www.nydailynews.com/news/money/ford-unveils-cool-new-in-car-technology-consumer-electronics-show-article-1.170650.

[5]    http://www.gminsidenews.com/forums/f37/ford-announces-myford-touch-technology-87723/.

[6]    http://www.zdnet.com/blog/gadgetreviews/ford-announces-myford-touch-with-dual-4-2-lcds-wi-fi-and-improved-voice-recognition/10838.

CLASS ACTION COMPLAINT - 6

23.     When announcing the roll-out of MyFord Touch, Ford announced that it would be installed on Lincoln and Mercury vehicles as well, and would be called MyLincoln Touch and MyMercury Touch respectively.[7]

24.     When Ford announced MyFord Touch, Ford's Vice President for Global Product Development stated that MyFord Touch, "delivers a premium interior experience that will help consumers fall in love with their vehicles again . . . ."[8]

25.     Ford designed MyFord Touch to take advantage of new technologies in order to simplify a user's experience with the vehicle.  As Ford's President stated at the time MyFord Touch was rolled out, "[a]s we began developing [MyFord Touch's] capability, we saw this groundswell of new technology, new functionality and incredible capability opening up to consumers  . . .  It was readily apparent that unless we devised an intuitive interface to help drivers manage these capabilities, they could detract – and possibly distract – from the driving experience."[9]

**B.     Description of MyFord Touch**

26.     MyFord Touch consists of three LCD interfaces that provide the gateway between the user, and the various technological features that comprise the MyFord Touch system.  The following photograph depicts the MyFord Touch system in a Ford vehicle:

---

[7]     *Id.*

[8]     http://www.gminsidenews.com/forums/f37/ford-announces-myford-touch-technology-87723/.

[9]     http://www.gminsidenews.com/forums/f37/ford-announces-myford-touch-technology-87723/.



27.     MyFord Touch consists of three visual interfaces.  The first is an 8-inch LCD touchscreen that is located in the center stack.  The following photograph depicts the 8-inch LCD touchscreen located within the center stack:



010388-11  625188 V1

28.     As can be seen above, the eight-inch LCD touchscreen interface is divided into four equal sized sections.  The upper left quarter of the screen is the interface which displays the connection to a user's mobile device, and allows the user to operate a mobile device, including making telephone calls, reviewing contact information on the user's mobile device, and other features related to the mobile device.  The lower left quarter of the screen operates the audio system in the vehicle.  It allows the user to access and select various radio stations, or other sources of audio that can be played in the vehicle.  The upper-right quarter of the screen permits the user to interface with the vehicles' navigation and GPS technology.  And finally, the bottom right quarter of the screen is the interface with the vehicles' climate control system and allows the user to control the climate in the car.  There is also a menu screen, which allows the user to control various aspects of the MyFord Touch system, as well as other features in the vehicle, including cabin lighting, audio settings, and other aspects of the vehicle.

29.     The other two LCD interfaces, are located to the left and right of the speedometer directly in front of the driver.  The following depicts the additional two LCD interfaces:

010388-11  625188 V1



30.     These two additional interfaces are not touch screens.  Rather, the user navigates these through a five-way control located on the steering wheel.  They allow the user to perform some of the same functions that can be performed on the center stack interface, however, on a more limited basis.

31.     MyFord Touch is powered by "Ford SYNC," a software program that is based on Microsoft's Windows Embedded Automotive operating system.[10]  SYNC operates a number of features that form part of the MyFord Touch system.

32.     Ford charges a hefty premium for the MyFord Touch system. According to Ford's website, when pricing a vehicle that includes MyFord Touch, it adds a significant cost to the price of the vehicle.  Some sources have reported that as a stand-alone product, the cost of the product is $1000.[11]

---

[10] http://www.zdnet.com/blog/gadgetreviews/ford-announces-myford-touch-with-dual-4-2-lcds-wi-fi-and-improved-voice-recognition/10838.

[11] http://en.wikipedia.org/wiki/MyFord_Touch.

CLASS ACTION COMPLAINT - 10

**C.     MyFord Touch Has Been Plagued with Serious Defects**

33.     In theory, MyFord Touch possesses a number of attractive features, but since its launch, MyFord Touch has failed to perform as advertised.  Many of the features advertised as part of the system often fail to perform.

34.     In addition, while many of the features of MyFord Touch were designed to make the driving experience safer for the vehicle owner, the persistent problems Class Vehicle owners and/or lessees have experienced with MyFord Touch have actually created significant safety risks, as the vehicle owners/lessees are forced to focus on the malfunction while driving or are distracted by the malfunction, and because the MyFord Touch system loses the ability to contact 9-1-1 in emergencies as designed.

35.     For example, while using certain features in MyFord Touch, such as the GPS navigation technology, the MyFord Touch screen will simply turn off, then turn back on and, when it does, it states that it is "performing scheduled system maintenance," and, in the meantime, the user's route that was programmed into the GPS is no longer available and can leave the vehicle owner lost.  Further, the system is not performing "scheduled" maintenance, it is simply malfunctioning.

36.     Additionally, because certain crucial vehicle functions, including the defroster and the rear-view camera, are routed through and controlled by MyFord Touch, these features become inoperable when the MyFord Touch system crashes.  Thus, driving in winter becomes dangerous because the driver cannot defrost his or her windshield and other windows, and drivers are more likely to collide with other cars or pedestrians when moving in reverse because the rear-view camera fails.

37.     Since the launch of MyFord Touch, the system has been plagued with numerous issues, and has not performed the functions it was intended to perform.  As further described below, Ford has attempted a series of corrective measures but, like the system itself, these measures have also been a failure.

---

010388-11  625188 V1

**D.      The TSBs and Warranty Extension**

38.      As Ford became aware of the many MyFord Touch problems being experienced by Class Vehicle owners, Ford issued several Technical Service Bulletins ("TSB") and updates in an effort to resolve them.

39.      On or about April 27, 2011, Ford issued TSB 11-4-18 pertaining to Ford vehicles equipped with MyFord Touch.  Specifically, Ford's TSB noted that these systems may experience blank screens, missing presets, lack of voice recognition, incorrect dialing of phone numbers and display problems with the backup camera. The TSB recommended reprogramming the software system.

40.      On or about July 22, 2011, Ford issued TSB 11-7-24 – a "succeed to" bulletin from 11-4-18 – again pertaining to the functionality of Ford vehicles equipped with MyFord Touch.  Specifically, this TSB explained that certain Class Vehicles, built on or before July 12, 2011, may experience various concerns with "blank/black display screen, radio switches from off to on or changes state after ending a phone call or voice command, phone pairing, incorrect Sirius channel selection using voice command, unable to download photo resolution 800x378, phonebook downloads, AM/FM missing preset display information, voice recognition, voice recognition when using SYNC services, USB device detection, travel link download time, Sirius channel art logo mismatch, clock intermittently displays incorrect time, traffic direction and information (TOI) calling wrong phone number, travel link subscription, address book downloads, navigation set in kilometers but voice communicates in miles, and backup camera scrolling display." As a result, Ford's TSB recommended performing a software update by fully reprogramming the Accessory Protocol Interface Module ("APIM"), and, where reprogramming was unsuccessful, replacing the APIM.

41.      On or about March 6, 2012, Ford issued Customer Satisfaction Program Campaign 12M01 pertaining to Ford vehicles equipped with the MyFord Touch

system.  This Campaign explained that certain MY 2011-2012 Explorer, Edge, MKX and MY 2012 Focus vehicles equipped with MyFord Touch may require replacement of the APIM, the brain of the MyFord Touch system.  Ford's 12M01 Campaign extended warranty coverage of the APIM to four years of service from the warranty start date on Ford vehicles and five years on Lincoln vehicles, regardless of mileage.

42.     On or about November 5, 2012, Ford issued TSB 12-11-1 due to concerns with "navigation, voice recognition, call sound quality, phone pairing and/or system performance" in the following Class Vehicles:

- 2011-2013 Edge, MKX and Explorer
- 2012-2013 Focus
- 2013 MKT, Taurus, MKS, Fusion, Escape, Flex and F-150

43.     As a result, Ford's TSB provided steps for a full software update of the APIM to the latest software version now available, version V3.5.1.  Those Class Vehicles equipped with navigation required a new A4 level SD-card for proper navigation function.

44.     On or about November 8, 2012, Ford issued Campaign "DEMONSTRATION/DELIVERY HOLD Application Performance Upgrade 11A01" because software was released to "improve overall system functionality, voice recognition, screen refresh rates, response to touch, and to simplify screens for ease of use" due to concerns with "navigation, voice recognition, call sound quality, phone pairing and/or system performance."  As a result, a "full image reprogram of the APIM" was to be completed on the following Class vehicles:

- 2011 Explorer
- 2011-2012 Edge, MKX
- 2012 Focus

45.     As a result, Ford's TSB provided steps for a full software update of the APIM to the latest software version now available, version V3.5.1.  Those Class

CLASS ACTION COMPLAINT - 13

Vehicles equipped with navigation required a new A4 level SD-card for proper navigation function.

46.    On or about November 15, 2012, Ford issued TSB 12-11-2 because certain vehicles equipped with MyFord Touch, built on or before May 14, 2012, exhibited "a voice prompt indicating SYNC's Service's Traffic, Directions or Information (TDI) is unable to locate the vehicle or a Global Position System (GPS) issue is present."  As a result, Ford instructed that technicians perform a reprogram of the Global Position Satellite Module (GPSM) on the following Class vehicles:

- 2010-2011 Fiesta, Focus, Mustang
- 2010-2012 Fusion Taurus
- 2010 Explorer Sport Trac
- 2010-2011 Explorer
- 2010-2012 E-Series, Edge, Escape, Expedition, F-150, F-Super Duty, Flex
- 2010-2012 MKS, MKZ
- 2010-2011 MKX
- 2010-2012 Navigator
- 2010 Milan, Mountaineer
- 2010-2011 Mariner
- 2011-2012 Edge, MKX
- 2012 Focus

47.    On or about January 14, 2013, Ford issued Campaign "DEMONSTRATION/DELIVERY HOLD Application Performance Upgrade 12A04" because software was released to "improve overall system functionality and performance including navigation, voice recognition, call sound quality, and phone Tiring."  As a result, and due to new software, Dealers were instructed "to inspect the APIM software level and if necessary, reprogram the Accessory Protocol

CLASS ACTION COMPLAINT - 14

Interface Module ….."  If the system was unresponsive, inoperative, or if the vehicle software update was unsuccessful, Dealers were instructed to replace the APIM in the following Class vehicles:

- 2011 Edge, Explorer, MKX
- 2012 Edge, Explorer, MKX, Focus
- 2013 Edge, Explorer, MKX, Focus, Escape, Flex, Fusion, Taurus, MKS, MKT, F-150

48.    A Ford "Special Service Message" dated March 29, 2013 states:

**32162 2011-2013 Vehicles MyTouch Functional Issues Due to Phonebook Content Contact Volume.**

Some MyTouch equipped vehicles may experience multiple functional issues such as slow navigation calculations, displayed time jump or audio popping during initial ignition on cycle.  These conditions can be created by the size of the contact list within the customer's phone book.  The amount of data within the contact list can create a processing problem for the module during a key on cycle.  This can be resolved by limiting the number and/or content within the contact list.  In addition, the automatic phonebook download feature can be set to off by selecting phone, settings, manage phone book, turn auto phone book off. Additional phone contacts can be added by manually re-downloading phone book in that same menu. Recommend following Workshop Manual section 415-00 for additional diagnostics and ensure a master reset is performed.  **EFFECTIVE DATE:  29-MARCH-2013**

CLASS ACTION COMPLAINT - 15

49.     On June 17, 2013, Ford issued a press release titled "SYNC and MyFord Touch Sold on 79 Percent of New Ford Vehicles, New Technology Drives Quality Satisfaction."  Ford announced that combined, MyFord Touch systems are sold on 79 percent of new 2013 Ford vehicles.  According to Ford, customers cite to these features as "top purchase drivers much more often than competitors."  Despite touting the successes of MyFord Touch systems, Ford contradicted that position by stating the "F-150 blends touch screen capability with traditional buttons and knobs, *a similar balance planned for future Ford vehicles*."  (Emphasis added.)  Ford also explained that it intends to release "another downloadable upgrade planned for this summer" in an attempt to further correct the MyFord Touch systems.

**E.      Similar Experiences and Complaints by Consumers**

50.     Plaintiff's experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same defect within the Class Vehicles.

51.     For example, a website titled "syncsucks.com" lists the following "most common Sync/MyFord Touch issues" all of which are symptoms of the same defective APIM.

- Screen goes black and won't come back on
- Back-up camera goes black without warning while backing up
- Sync system restarts without warning while driving
- Sync system freezes up completely even after the vehicle is turned off
- Says phone connected, yet voice says no phone connected when asking to dial number
- Displays phone is connected, yet after repeated efforts it will not respond to ANY voice command
- Music randomly starts playing while using the phone

CLASS ACTION COMPLAINT - 16

- Randomly jumps from audio source to audio source
- Keeps disconnecting USB iPod
- Will not recognize multiple brand-new USB jump drives
- Never really got to enjoy my six months of satellite radio as Sync said I had no subscription forcing me to call Sirius multiple times to try and sort that out.[12]

52.     Another website called http://fordsyncproblems.com/ was created by a consumer in response to "Ford's inability to resolve issues with my newly purchased 2012 Ford Escape." This person claims that "When making a phone call through the Sync system I can hear the phone conversation clearly through the car speakers BUT the person on the other end of the conversation cannot hear me clearly; it either sounds like I am in a tunnel or it is very choppy. The quality of the conversation gets worse as your speed increases."[13] There are several other similar websites.[14]

53.     Likewise, the database maintained by the National Highway Traffic Safety Administration contains several similar complaints by consumers, some of which are set forth below:

**Date Complaint Filed:** 7/8/2013
**Date of Incident:** 7/7/2013
**NHTSA ID Number:** 10523680
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** Not Available
**SUMMARY:**
DEAR NHTSA, I HAVE RECENTLY PURCHASED A FORD EXPLORER LIMITED 2013 MODEL ABOUT 3 MONTHS AGO. SINCE I HAVE PURCHASED THIS VEHICLE I HAVE NOTICED THAT THE MYTOUCH SYSTEM HAS CONSTANT GLITCHES AND CAUSING DISTRACTIONS WHILE DRIVING. YESTERDAY I STARTED THE VEHICLE AND THE ENTIRE SCREEN WAS OUT INCLUDING THE BACKUP SENSORS AND CAMERA. I HAVE CONTACTED FORD AND THE DEALERSHIP BUT THEY

---

[12] http://www.syncsucks.com/.

[13] http://fordsyncproblems.com/5001.html

[14] See http://www.fordfusionclub.com/showthread.php?t=413068; http://www.focusfa natics.com/forum/showthread. php?t=260838; http://jalopnik.com/gm-hasnt-really-found-that-new-thing-yet-for-ford-its-485829232.

CLASS ACTION COMPLAINT - 17

DO NOT SEEM TO BE VERY RESPONSIVE. I WILL BE TAKING THIS VEHICLE TO THE DEALERSHIP TOMORROW HOWEVER I FIND THIS TO BE A SAFETY ISSUE AS MY WIFE RELIES ON THE CAMERA AND SENSORS WHEN PARKING A VEHICLE.

**Date Complaint Filed:** 4/10/2013
**Date of Incident:** 4/9/2013
**NHTSA ID Number:** 10505787
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 2LMDJ6JK0DB…
**SUMMARY:**
WHILE DRIVING ON THE HIGHWAY AT ABOUT 65MPH, THE SYNC SYSTEM SCREEN WENT BLACK, AFTER ABOUT 5 MINUTES, THE SYSTEM CAME BACK UP. I WAS UTILIZING THE NAVIGATION SYSTEM AT THE TIME AND WAS FORCED TO STOP, RE-ENTER THE DETAILS OF THE LOCATION I WAS INTENDED TO VISIT. THE SYNC SYSTEM SHOULD NEVER JUST RESTART ITSELF WITHOUT WARNING A DRIVER. I AM CONCERNED THERE IS A MORE SEVERE PROBLEM WITH THE MAIN CONTROL SYSTEM WITH THIS PARTICULAR VEHICLE AS THREE OTHER ISSUES HAPPENED WITHIN A WEEK OF EACH OTHER. 1. BLIB MODULE (BLIND SPOT AND CROSS TRAFFIC SENSORS FAULTED AND NEEDED REPLACEMENT) 2. SYNC SYSTEM REBOOTS ITSELF WHILE DRIVING AND ULTIZING NAVIGATION 3. LOW PRESSURE ERROR POPS UP, STEERING BECOMES IMPOSSIBLE, ACCELERATION DIES, AND BRAKING SLUGGISH. CAR REQUIRED SHUTDOWN AND RESTART TO RESOLVE. *TR

**Date Complaint Filed:** 1/19/2013
**Date of Incident:** 7/11/2012
**NHTSA ID Number:** 10493496
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 1FMCU9H99…
**SUMMARY:**
THE MYFORDTOUCH SYSTEM WITH NAVIGATION IS UNSAFE. DUE TO CONTINUOUS SOFTWARE AND HARDWARE ERRORS, THE LARGE VIDEO SCREEN IS DISTRACTING TO THE DRIVER. PHONE DOES NOT SYNC FROM TIME TO TIME, NAVIGATION DOES NOT ACQUIRE GPS SIGNAL OR VEHICLE POSITION IS INCORRECT. MANY PROBLEMS WITH BLUETOOTH AND USB INTEGRATION, TOO MANY TO LIST HERE. WHEN GLITCHES OCCUR, THE SCREEN OFTEN GOES COMPLETELY BLANK, SHOWING NOTHING AT ALL. I HAVE HAD MY ESCAPE IN FOR SERVICE THREE TIMES FOR THESE PROBLEMS. MY SPOUSE COMPLAINS WHEN SHE RIDES IN THE CAR THAT I AM DISTRACTED BY CONTINUOUS ERRORS OF THE MFT DISPLAY. PROBLEMS WITH MFT SYSTEM HAVE ALSO BEEN NOTED BY CONSUMER REPORTS. I WILL TAKE ADVANTAGE OF THE LEMON LAW TO CORRECT THIS UNSAFE SITUATION WITH MY VEHICLE. *TR

**Date Complaint Filed:** 12/6/2012
**Date of Incident:** 12/3/2012
**NHTSA ID Number:** 10488263
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** Not Available
**SUMMARY:**

---

CLASS ACTION COMPLAINT - 18

2011 FORD EXPLORER. CONSUMER WRITES IN REGARDS TO ISSUES WITH A "MY FORD TOUCH" VOICE ACTIVATED SYSTEM. *TGW THE CONSUMER STATED THE "MY FORD TOUCH" IS A VOICE OR TOUCH SCREEN ACTIVATED SYSTEM THAT CONTROLLED ENTERTAINMENT, CLIMATE, NAVIGATION AND HANDS FREE CELL PHONE FUNCTIONS. WHEN THE SYSTEM STOPPED WORKING, THERE WAS NO CONTROL OVER ANY OF THE AFOREMENTIONED DEVICES. THE CONSUMER HAD TO TAKE THE VEHICLE TO THE DEALER THREE TIMES, BECAUSE OF THE MALFUNCTIONING SYSTEM. A TYPICAL PROBLEM WAS THE SYSTEM LOCKING UP, THE SCREEN WOULD FREEZE AND THERE WAS NO CONTROL OVER THE HEATER/AIR CONDITIONER OR RADIO VOLUME. USUALLY AFTER 10-12 MINUTES THE SCREEN WOULD GO BLANK AND A MESSAGE APPEARED THAT READ PERFORMING SCHEDULE MAINTENANCE. WHEN THE SYSTEM WAS FINALLY RESTORED, EVERYTHING WORKED AGAIN. SOMETIMES WHEN USING THE NAVIGATION TO FIND AN ADDRESS, THE CAR ICON WOULD WANDER OFF THE PRESCRIBED ROUTE EVEN THOUGH THE CONSUMER WAS DRIVING THE PRESCRIBED ROUTE. WHEN THAT HAPPENED, THE SCREEN WOULD OFTEN DISPLAY A LARGE YELLOW QUESTION MARK. THE FIRST TIME THE CONSUMER VISITED THE DEALER, THEY FLASHED THE MEMORY. IT HELPED, BUT IT STILL FAILED, AT TIMES. THE SECOND TIME, HE RETURNED TO THE DEALER, THEY INSTALLED AN UPDATED PROGRAM FROM FORD THAT WAS SUPPOSED TO CORRECT THE PROBLEMS. BUT, AS TIME WENT ON, THE NEW PROGRAM STARTED TO FAIL IN A SIMILAR WAY AS THE OLD PROGRAM. THE LAST TIME, THE CONSUMER VISITED THE DEALER, THEY DID A MASTER RESET BY DISCONNECTING THE BATTERY, THEREBY REMOVING ALL POWER FROM THE SYSTEM AND REBOOTING IT WHEN THE BATTERY WAS RECONNECTED. THE DEALER INFORMED THE CONSUMER, HE COULD ALSO PULL FUSE 29 AND PUT IT BACK IN AGAIN. HOWEVER, THE CONSUMER STATED HE WAS NOT ABLE TO REACH THE FUSE, AS IT WAS TUCKED WAY UP UNDER THE DASHBOARD, BUT EVEN IF HE COULD REACH IT, IT WOULDN'T FIX THE DEFECTIVE SOFTWARE PROVIDED BY FORD AND MICROSOFT. DISCONNECTING THE BATTERY DIDN'T FIX THE PROBLEM, IT ONLY REBOOTED THE COMPUTER AND EVENTUALLY, THE PROBLEM WOULD RETURN. *JB

**Date Complaint Filed:** 11/6/2012
**Date of Incident:** 9/4/2012
**NHTSA ID Number:** 10483516
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 1FMCU0H9XDU…
**SUMMARY:**
TL* THE CONTACT OWNS A 2013 FORD ESCAPE. THE CONTACT STATED THAT THE MYTOUCH SYSTEM FAILED AND WOULD NOT ALLOW HER TO MAKE A CALL. IN ADDITION, THE MYTOUCH SYSTEM WOULD NOT PROPERLY RESPOND TO COMMANDS. THE VEHICLE WAS TAKEN TO THE DEALER FOR TESTING ON SEVERAL OCCASIONS WHERE THE DEALER ADVISED THAT THE MYTOUCH CHIP NEEDED TO BE REPLACED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND ADVISED THE CONTACT THAT SOMEONE WOULD CALL THE CONTACT AT A LATER DATE. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 22,083.

**Date Complaint Filed:** 10/31/2012

010388-11  625188 V1

**Date of Incident:** 6/15/2011
**NHTSA ID Number:** 10482741
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 2FMDK4KC9BB…
**SUMMARY:**
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED THAT WHILE PARKED THE CONTACT NOTICED THE SYNC TECHNOLOGY ON THE TOUCH SCREEN WAS NOT FUNCTIONING PROPERLY AFFECTING THE AIR CONDITIONER, RADIO, CELL PHONE SYNC, AND NAVIGATION SYSTEM. THE CONTACT STATED HE WAS CONSTANTLY DISTRACTED AND LOOKING AWAY FROM THE ROAD TO CANCEL OR SWITCH FUNCTIONS ON THE SCREEN. THE VEHICLE WAS TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING FOURTEEN DIFFERENT TIMES. THE TECHNICIAN PERFORMED VARIOUS SOFTWARE UPDATES AND REPLACED THE COMPUTER THREE DIFFERENT TIMES BUT THE FAILURE CONTINUED. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 200.

**Date Complaint Filed:** 9/25/2012
**Date of Incident:** 7/25/2012
**NHTSA ID Number:** 10477022
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 1FMCU0H93DU…
**SUMMARY:**
NUMEROUS FAULTS WITH RADIO AND NAVIGATION SYSTEM PART OF MYFORDTOUCH SYSTEM. THE RADIO WILL COME ON BY ITSELF AND WILL NOT SHUT OFF. THIS USUALLY OCCURS WHEN A CELL PHONE IS IN USE AND CONNECTS OR DISCONNECTS VIA BLUETOOTH WHEN THE CAR IS STARTED OR TURNED OFF. WHEN THIS FAULT OCCURS THE RADIO WILL NOT ALLOW DIFFERENT STATIONS TO BE SELECTED. THE RADIO WILL NOT TURN OFF EVEN AFTER THE ENGINE IS TURNED OFF AND THE DOORS ARE OPENED. THE POWER BUTTON FOR THE RADIO WILL NOT FUNCTION TO SHUT OFF THE RADIO AT THESE TIMES. THE RADIO WILL REMAIN ON FOR APPROXIMATELY 20 MINUTES AFTER THE VEHICLE IS SHUT OFF AND THE ALARM IS TURNED ON. THE DEALER HAS ACKNOWLEDGED THIS PROBLEM EXISTS WITH SIMILAR VEHICLES AND HAS STATED THAT A REPAIR DOES NOT EXIST. THE NAVIGATION SYSTEM IS SLOW TO RESPOND AND AT TIMES CANNOT PROPERLY LOCATE THE VEHICLE. THE NAVIGATION SYSTEM ALSO HAS FAULTED BY NOT ALLOWING MANUAL ENTRY OF ADDRESSES OR SELECTION OF SAVED DESTINATIONS. THE DEALER HAS ACKNOWLEDGED A REPAIR FOR THIS DOES NOT EXIST OTHER THAN TO DISCONNECT THE BATTERY TERMINALS FOR AT LEAST 10 MINUTES. *TR

**Date Complaint Filed:** 8/9/2012
**Date of Incident:** 8/26/2011
**NHTSA ID Number:** 10469990
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 1FMHK7D81BG…
**SUMMARY:**
FORD "MYFORDTOUCH" SYSTEM HAS FAILED ON NUMEROUS OCCASIONS. IT HAS FROZEN, LOCKED UP, AND CONTINUOUSLY REBOOTED. WHEN THIS OCCURS, YOU LOSE ALL FUNCTIONALITY AND ABILITY TO CHANGE RADIO STATIONS, ADJUST CLIMATE CONTROL,

010388-11  625188 V1

USE NAVIGATION, HANDS FREE FUNCTIONS, ETC. WHILE THERE IS SOME MANUAL CONTROLS FOR BASIC OPERATIONS, IT DOES NOT ALLOW FULL CONTROL OF TALL SYSTEMS. FOR INSTANCE, WHEN THE MFT SYSTEM FAILS, YOU HAVE NO ABILITY TO TURN ON OR ADJUST THE REAR CLIMATE CONTROLS FOR REAR PASSENGERS. DEALER HAS TRIED UPGRADING SOFTWARE, RESETTING SOFTWARE, REINSTALLING SOFTWARE, AND REPLACING HARDWARE. WHILE THE PROBLEM IS NOT AS BAD AS IT HAS BEEN, IT CONTINUES WITH NO RESOLVE. *TR

**Date Complaint Filed:** 6/1/2011
**Date of Incident:** 4/5/2011
**NHTSA ID Number:** 10404872
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 2LMDJ6JK5BB…
**SUMMARY:**
WHEN DRIVING DOWN THE HIGHWAY, THE SYNC SCREEN GOES COMPLETELY BLANK. AT THIS POINT I HAVE NO ACCESS TO HEAT, A/C, DEFROSTER, RADIO, OR BACKUP CAMERA. ON OCCASION THE SCREEN HAS BEEN BLANK FOR UP TO ONE HUNDRED MILES. I DON'T WORRY ABOUT THE DEFROSTER IN THE SUMMER BUT IN THE WINTER THIS IS A DEFINITE SAFETY CONCERN. NOT HAVING THE BACKUP CAMERA IS RISKY FOR THERE MAY BE SMALL CHILDREN BEHIND THE VEHICLE. I'VE BEEN IN CONTACT WITH FORD MOTOR COMPANY. THEY TELL ME THERE ENGINEERING DEPARTMENT IS WORKING ON A FIX BUT THERE IS NO ETA NOR DO THEY HAVE ANY IDEA WHEN OR IF THEY CAN FIX IT. THE CONSUMER WANTED TO INCLUDE THE FILE NUMBER ASSIGNED TO HER BY FORD MOTOR COMPANY. COMPLAINT # 441951441

**Date Complaint Filed:** 12/15/2010
**Date of Incident:** 12/10/2010
**NHTSA ID Number:** 10370847
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 2FMDK3JC0BB…
**SUMMARY:**
SYNC/MY TOUCH CONSOLE ON 2011 FORD EDGE LOCKS UP OR GOES DEAD. THERE IS NO WAY TO ACTIVATE THE WINDSHIELD DEFROST WITHOUT THE TOUCH SCREEN. DEALERSHIP SERVICE DEPARTMENT HAS BEEN UNABLE TO UNLOCK SCREENS. THIS PROBLEM HAS BEEN WIDELY REPORTED ON OWNERS WEBSITE FOR THE 2011 EDGES, BUT FORD DOES NOT SEEM TO HAVE A FIX FOR IT. IT IS WINTER AND I NEED TO RUN DEFROST. *TR

**Date Complaint Filed:** 11/15/2010
**Date of Incident:** 10/20/2010
**NHTSA ID Number:** 10365783
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 2FMDK4KC9BB…
**SUMMARY:**
THIS IS A PREEMPTIVE COMPLAINT, AS I THANKFULLY HAVE NOT HAD AN ACCIDENT YET. THE MYFORDTOUCH SYSTEM IN ALL 2011 FORD MOTOR CO VEHICLES ARE DEFECTIVE. THE SYSTEM HAS A MULTITUDE OF DEFECTS, BUT THE SAFETY RELATED DEFECT IS THAT THE SYSTEM CAN SPONTANEOUSLY REBOOT AT ANY TIME WITH NO WARNING TO THE DRIVER. THIS CAN HAPPEN AT RANDOM, AND

CLASS ACTION COMPLAINT - 21

010388-11  625188 V1

MULTIPLE TIMES WITHIN A SHORT PERIOD OF TIME. WHEN BACKING UP THIS SHUTS DOWN THE BACKUP CAMERA WHICH COULD RESULT IN INJURIES TO CHILDREN WHO GET BEHIND THE VEHICLE. AT NIGHT THIS CAUSES THE SCREEN TO SUDDENLY GO FULL WHITE AT FULL BACKLIGHT, WHICH IS EXTREMELY DISTRACTING TO A DRIVER AT NIGHT. ANOTHER SAFETY ISSUE WOULD BE WHEN THE SYSTEM REBOOTS WHEN THE DRIVE IS BEING GUIDED TO AN EMERGENCY FACILITY OR IS ON THE PHONE WITH 911. FORD ACKNOWLEDGED THE PROBLEMS TO DEALERSHIPS ON OCT 20TH AND INFORMED THEM NOT TO DO ANYTHING AT THIS TIME. MANY CUSTOMERS HAVE BEEN REPORTING THESE PROBLEMS ON THE OWNER2OWNER WEBSITE FOR THE FORD SYNC SYSTEM. I AM SUBMITTING THIS COMPLAINT IN HOPES IT CAN BE DEALT WITH BEFORE SOMEONE GETS HURT RATHER THAN AFTER. THANK YOU *TR

**Date Complaint Filed:** 10/28/2010
**Date of Incident:** 9/27/2010
**NHTSA ID Number:** 10362842
**Manufacturer:** Ford Motor Company
**Vehicle Identification Number:** 2LMDJ8JK8BB…
**SUMMARY:**
THE SIRIUS TRAVEL LINK (THRU MYLINCOLN TOUCH) DOES NOT WORK AND HAS NOT WORKED FROM DAY 1 OF PICKING UP THE SUV ON 9/27/10. AT FIRST LINCOLN WOULD NOT ADMIT ANY ISSUES BUT NOW THEY FINALLY DO BUT DO NOT SAY WHEN A FIX WILL BE AVAILABLE. I SHOULD HAVE BEEN TOLD THAT OPTION WAS NOT WORKING BEFORE THEY HAD ME SIGN A LEASE FOR THE CAR. ALOT OF US ARE PAYING FOR SOMETHING THAT DOES NOT WORK AND DO NOT KNOW IF IT EVER WILL. *TR

## F.    Fallout From the MyFord Touch Problems

54.    After many years of steady improvement in its reputation for quality, as a direct result of the problems associated with MyFord Touch, Ford's standing among consumers and consumer reporting organizations plummeted following the launch of the system.  For example, J.D. Power & Associates "Initial Quality Study" examines vehicles during the first 90 days of ownership.[15]  In 2010, the last year before rolling out the MyFord Touch system, Ford placed fifth on J.D. Power & Associates' Initial Quality Study.[16]  In 2011, after the rollout, Ford plummeted to

---

[15]   http://wheels.blogs.nytimes.com/2011/06/23/aggravating-myford-touch-sends-ford-plummeting-in-j-d-power-quality-survey/?hpw.

[16]   http://wheels.blogs.nytimes.com/2011/06/23/aggravating-myford-touch-sends-ford-plummeting-in-j-d-power-quality-survey/?hpw.

010388-11  625188 V1

23rd place in the same survey.[17]  In 2010, Lincoln was ranked eighth in the same survey.[18]  In 2011, it plummeted to 17th place.[19]

55.    A J.D. Power & Associates Vice President stated that the primary driver in Ford's descent was the MyFord Touch system.[20]

56.    So rampant are the problems, Consumer Reports recommends that *no* consumer purchase Ford vehicles that are equipped with MyFord Touch.[21]

57.    Ford marketed, distributed, and sold the Class Vehicles with the MyFord Touch in the State of California, as well as nationwide.

58.    Ford knew or, at a minimum, should have known at the time it began to advertise and sell and/or lease the Class Vehicles that MyFord Touch contained serious latent design, manufacturing, and/or assembly defects that cause the MyFord Touch system to persistently malfunction.

59.    Plaintiff believes that due to these defects, the MyFord Touch is defective and is not fit for its intended purposes.

60.    The defect has or will cost Plaintiff and the other Class members money in repair costs and has resulted in extended periods of time when Plaintiff and the other Class members are without their vehicles, or are deprived of the full use of their vehicles.

61.    The defect has diminished the value of the Class vehicles.  The Class Vehicles were worth less than Plaintiff and the other Class members paid for them.

---

[17]   http://wheels.blogs.nytimes.com/2011/06/23/aggravating-myford-touch-sends-ford-plummeting-in-j-d-power-quality-survey/?hpw.

[18]   http://wheels.blogs.nytimes.com/2011/06/23/aggravating-myford-touch-sends-ford-plummeting-in-j-d-power-quality-survey/?hpw.

[19]   http://wheels.blogs.nytimes.com/2011/06/23/aggravating-myford-touch-sends-ford-plummeting-in-j-d-power-quality-survey/?hpw.

[20]   http://wheels.blogs.nytimes.com/2011/06/23/aggravating-myford-touch-sends-ford-plummeting-in-j-d-power-quality-survey/?hpw.

[21]   http://en.wikipedia.org/wiki/MyFord_Touch#cite_note-16

CLASS ACTION COMPLAINT - 23

A vehicle containing the defects described herein is worth less than a vehicle free of such defects.

## VI.   CLASS ALLEGATIONS

62.   Plaintiff brings this action on behalf of itself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

> All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

> All persons or entities who purchased or leased a Class Vehicle in the State of California (the "California Class").

(collectively, the "Class," unless otherwise noted).

63.   Excluded from the Class are individuals who have personal injury claims resulting from the defect in the MyFord Touch system.  Also excluded from the Class are Ford and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family.  Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

64.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

65.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

66.   **Numerosity.  Federal Rule of Civil Procedure 23(a)(1)**:  The members of the Nationwide and California Classes are so numerous and geographically dispersed that individual joinder of all Class members is

010388-11  625188 V1

impracticable.  While Plaintiff is informed and believes that there are not less than tens of thousands of members of the Nationwide and California Classes, the precise number of Nationwide and California Class members is unknown to Plaintiff, but may be ascertained from Ford's books and records.  Nationwide and California Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

67.  **Commonality and Predominance: – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**:  This action involves common questions of law and fact, which predominate over any questions affecting individual Nationwide and California Class members, including, without limitation:

a) Whether Ford engaged in the conduct alleged herein;

b) Whether Ford designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c) Whether the MyFord Touch system in the Class Vehicles contains a defect;

d) Whether such defect causes the MyFord Touch system in the Class Vehicles to malfunction;

e) Whether Ford knew about the defects, and, if so, how long Ford has known of the Defect;

f) Whether Ford designed, manufactured, marketed, and distributed Class Vehicles with a defective MyFord Touch system;

g) Whether Ford's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h) Whether Ford knew or should have known that the defects that existed with regard to the MyFord Touch system would lead to the malfunctions experienced with respect to the Class Vehicles;

i) Whether Ford knew or reasonably should have known of the MyFord Touch defects in the Class Vehicles before it sold or leased them to Class Members;

j) Whether Plaintiff and the other Class members overpaid for their Class Vehicles as a result of the defects alleged herein;

k) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

l) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

68. **Typicality: Federal Rule of Civil Procedure 23(a)(3)**:  Plaintiff's claims are typical of the other Nationwide and California Class members' claims because, among other things, all Nationwide and California Class members were comparably injured through Ford's wrongful conduct as described above.

69. **Adequacy: Federal Rule of Civil Procedure 23(a)(4)**:  Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other members of the Nationwide and California Classes it seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and its counsel.

70. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2):**  Ford has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide and California Class members as a whole.

010388-11  625188 V1

71.     **Superiority: Federal Rule of Civil Procedure 23(b)(3):** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Nationwide and California Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Ford, so it would be impracticable for Nationwide and California Class members to individually seek redress for Ford's wrongful conduct.  Even if Nationwide and California Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CLAIMS FOR RELIEF

A.     **Claims Brought on Behalf of the Nationwide Class**

### COUNT I

### (VIOLATION OF MAGNUSON-MOSS WARRANTY ACT)

72.     Plaintiff incorporates by reference all allegations of Paragraphs 1-71 as though fully set forth herein.

73.     Plaintiff brings this Count on behalf of the Nationwide Class.

74.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

75.     Ford is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

76.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

77.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

78.     Ford's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

79.     Ford breached these warranties as described in more detail above. Without limitation, the Class Vehicles are equipped with the MyFord Touch system, a defective interactive electronic unit within the Class Vehicles.  The Class Vehicles share a common design defect in that the MyFord Touch System fails to operate as represented by Ford.

80.     Plaintiff and the other Nationwide Class members have had sufficient direct dealings with either Ford or its agents (dealerships and technical support) to establish privity of contract between Ford, on one hand, and Plaintiff and each of the other Nationwide Class members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Ford and its dealers, and specifically, of Ford's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

81.     Affording Ford a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  Indeed, Plaintiff has already done so, and Ford has failed, after numerous attempts, to cure the defects.  At the time of sale or lease of each Class Vehicle, Ford knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the

010388-11  625188 V1

situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resorts to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

82.   Plaintiff and the other Nationwide Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because Ford is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Nationwide Class members have not re-accepted their Class Vehicles by retaining them.

83.   The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

84.   Plaintiff, individually and on behalf of the other Nationwide Class members, seeks all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

**COUNT II**

**(BREACH OF EXPRESS WARRANTY)**

85.   Plaintiff incorporates by reference all allegations of Paragraphs 1-71 as though fully set forth herein.

86.   Plaintiff brings this Count on behalf of the Nationwide Class.

87.   Ford expressly warranted that the Class Vehicles, together with the MyFord Touch systems installed therein, were of high quality and, at a minimum, would work properly and as intended.  Ford also expressly warranted that it would

CLASS ACTION COMPLAINT - 29

repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

88.     Ford breached this warranty by selling to Plaintiff and the other Nationwide Class members the Class Vehicles with known defective MyFord Touch Systems.  As alleged hereinabove, the defective MyFord Touch Systems fail to function properly as a result of an inherent design and/or manufacturing defect.  By failing to properly repair and/or replace the defective MyFord Touch Systems when Plaintiff and the other Nationwide Class members presented their vehicles to authorized Ford dealers, Ford also breached this warranty.

89.     As a result of Ford's conduct, Plaintiff and the other Nationwide Class members have suffered economic damages including, without limitation, costly repairs, loss of vehicle and use of MyFord Touch, substantial loss in value and resale value of the vehicles, and other related damage.

90.     Plaintiff and the other Nationwide Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Ford's conduct described hereinabove.

**COUNT III**

**(BREACH OF IMPLIED WARRANTY OF FITNESS
FOR A PARTICULAR PURPOSE)**

91.     Plaintiff incorporates by reference all allegations of Paragraphs 1-71 as though fully set forth herein.

92.     Plaintiff brings this Count on behalf of the Nationwide Class.

93.     At the time of contracting, Ford had reason to know of the Plaintiff's and other Nationwide Class members' particular purpose for purchasing or leasing a Class Vehicle with a MyFord Touch system.  That particular purpose includes use of the MyFord Touch system to provide navigational direction, entertainment functions, hands-free telephone use, and the ability to call 9-1-1 in emergencies.

CLASS ACTION COMPLAINT - 30

94.     Plaintiff and the other Nationwide Class members relied on Ford's skill and/or judgment to select or furnish suitable goods, thereby creating an implied warranty that the goods would be fit for such purpose.

95.     The MyFord Touch system was not fit for these purposes, as alleged hereinabove.  Thus, Plaintiff and the other Nationwide Class members were injured by Ford's conduct in breaching the implied warranty.

## COUNT IV

## (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

96.     Plaintiff incorporates by reference all allegations of Paragraphs 1-71 as though fully set forth herein.

97.     Plaintiff brings this Count on behalf of the Nationwide Class.

98.     Ford is and was at all relevant times a merchant with respect to MyFord Touch-equipped motor vehicles.

99.     The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which MyFord Touch equipped motor vehicles are used.  Specifically, the Class Vehicles are equipped with a defective MyFord Touch unit, precluding use of the unit's various functions, including provision of navigational direction, entertainment functions, hands-free telephone use, and the ability to call 9-1-1 in emergencies.  The Class Vehicles share a common design defect in that the MyFord Touch systems fails to operate as represented by Ford.

100.   Ford was provided notice of these issues and defects through numerous complaints filed against it, as well as internal knowledge derived from testing and internal analyses.

101.   Plaintiff and the other Nationwide Class members have had sufficient dealings with either Ford or its agents (dealerships, technical support) to establish privity of contract between Ford, on one hand, and Plaintiff and each of the other

010388-11  625188 V1

Nationwide Class members on the other hand.  Nonetheless, privity is not required here because Plaintiff and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between Ford and its dealers and, specifically, of Ford's implied warranties.  The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

102.   As a direct and proximate result of Ford's breach of the warranty of merchantability, Plaintiff and the other Nationwide Class members have been damaged in an amount to be proven at trial.

**B.      Claims Brought on Behalf of the California Class**

**COUNT V**

**(VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW)**

103.   Plaintiff incorporates by reference all allegations of Paragraphs 1-71 as though fully set forth herein.

104.   Plaintiff brings this Count on behalf of the California Class.

105.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

106.   Ford's conduct, as described hereinabove, was and is in violation of the UCL.  Ford's conduct violates the UCL in at least the following ways:

i.      By knowingly and intentionally concealing from Plaintiff and the other California Class members that the Class Vehicles suffer from a design defect;

ii.     By marketing Class Vehicles as possessing functional and defect-free infotainment units;

CLASS ACTION COMPLAINT - 32

iii.     By misrepresenting the nature of the defect as a "compatibility issue" rather than an inherent problem with the MyFord Touch System design;

iv.     By refusing or otherwise failing to repair and/or replace defective MyFord Touch systems in Class Vehicles;

v.     By violating federal laws, including the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301; and

vi.     By violating other California laws, including Cal. Civ. Code §§ 1709, 1710, and 1750, *et seq.*, and Cal. Comm. Code § 2313.

107.    As a result of Ford's misrepresentations and omissions alleged herein, Plaintiff and the other California Class members overpaid for their Class Vehicles because the value of the MyFord Touch system was illusory.

108.    Ford's misrepresentations and omissions alleged herein caused Plaintiff and the other California Class members to make their purchases or leases of their Class Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other California Class members would not have purchased or leased these Vehicles, would not have purchased or leased these Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain an infotainment system comparable to the MyFord Touch system and which were not marketed as including such a system.

109.    Accordingly, Plaintiff and the other California Class members have lost money or property as a result of Ford's misrepresentations and omissions, in an amount to be determined at trial.

110.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Ford under Cal. Bus. & Prof. Code § 17200.

010388-11  625188 V1

**COUNT VI**

**(VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT)**

111.   Plaintiff incorporates by reference all allegations of Paragraphs 1-71 as though fully set forth herein.

112.   Plaintiff brings this Count on behalf of the California Class.

113.   California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

114.   The Class Vehicles are "goods" as defined in CAL. CIV. CODE § 1761(a).

115.   Plaintiff and the other California class members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiff, the other California class members, and Defendant are "persons" as defined in CAL. CIV. CODE § 1761(c).

116.   In purchasing or leasing the Class Vehicles, Plaintiff and the other California Class members were deceived by Ford's failure to disclose that the Class Vehicles were equipped with defective MyFord Touch systems.

117.   Ford's conduct, as described hereinabove, was and is in violation of the CLRA.  Ford's conduct violates at least the following enumerated CLRA provisions:

i.      CAL. CIV. CODE § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

ii.     CAL. CIV. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

iii.    CAL. CIV. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

iv.     Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

010388-11  625188 V1

118.   Plaintiff and the other California Class members have suffered injury in fact and actual damages resulting from Ford's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.

119.   Ford knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the MyFord Touch systems, and that the MyFord Touch systems were not suitable for their intended use.

120.   The facts concealed and omitted by Ford to Plaintiff and the other California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price.  Had Plaintiff and the California Class known about the defective nature of the Class Vehicles and their MyFord Touch Systems, they would not have purchased or leased the Class Vehicles or would not have paid the prices they paid in fact.

121.   Plaintiff's and the other California Class members' injuries were proximately caused by Ford's fraudulent and deceptive business practices.

122.   Therefore, Plaintiff and the other California Class members are entitled to equitable relief under the CLRA.

123.   Plaintiff has provided Ford with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Ford on July 15, 2013, and is attached to this Complaint as Appendix A.

124.   Notwithstanding any allegation in this Complaint, Plaintiff does not seek monetary damages under the CLRA at this time, but will amend this Complaint to seek monetary, compensatory, and punitive damages under the CLRA, in addition to the injunctive and other equitable relief presently sought, in accordance with Cal. Civ. Code § 1782.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Nationwide and California Classes, as proposed in this Consolidated Complaint, respectfully requests that the Court enter judgment in its favor and against Defendant, Ford Motor Company, as follows:

A.      Declaring that this action is a proper class action, certifying the Nationwide and California Classes as requested herein, designating Plaintiff as Nationwide and California Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B.      Enjoining Defendant from continuing the unfair business practices alleged in this Complaint and requiring Defendant to institute a recall or free replacement program;

C.      Ordering Defendant to pay actual damages (including punitive damages) to Plaintiff and the other Nationwide and California Class members, as allowable by law;

D.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

E.      Ordering Defendant to pay attorney fees and costs of suit; and

F.      Ordering such other and further relief as may be just and proper.

## IX.    JURY TRIAL DEMAND

Plaintiff, by counsel, requests a trial by jury on its legal claims, as set forth herein.

//

//

010388-11  625188 V1

Dated: July 15, 2013

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: _____
    Elaine T. Byszewski (SBN 222304)
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
Email:  elaine@hbsslaw.com

Steve W. Berman (to be admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com

Jason A. Zweig (to be admitted *pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
555 Fifth Avenue, Suite 1700
New York, NY  10017
Telephone:  (212) 752-5455
Facsimile:  (917) 210-3980
Email:  jasonz@hbsslaw.com

Adam J. Levitt (to be admitted *pro hac vice*)
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 1200
Chicago, IL  60602
Telephone:  (312) 214-0000
Facsimile:  (312) 214-0001
Email:  alevitt@gelaw.com

Kyle J. McGee (to be admitted *pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, DE  19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
Email: kmcgee@gelaw.com

---

CLASS ACTION COMPLAINT - 37

010388-11  625188 V1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gregory M. Travalio (to be admitted
   *pro hac vice*)
Mark H. Troutman (to be admitted *pro hac vice*)
**ISAAC, WILES, BURKHOLDER
   & TEETOR LLC**
Two Miranova Place, Suite 700
Columbus, OH 43215
Telephone:  (614) 221-2121
Facsimile: (614) 365-9516
Email: gtravalio@isaacwiles.com
Email: mtroutman@isaacwiles.com


*Counsel for Plaintiff The Center for Defensive
Driving*

---

CLASS ACTION COMPLAINT - 38

# *Appendix A*



123 Justison Street
Wilmington, Delaware  19801
Tel:  302-622-7000 · Fax: 302-622-7100

485 Lexington Avenue
New York, New York 10017
Tel: 646-722-8500 · Fax: 646-722-8501

www.gelaw.com

Direct Dial: (312) -0000
alevitt@gelaw.com

1920 L Street, N.W., Suite 400
Washington, District of Columbia 20036
Tel: 202-783-6091· Fax: 202-350-5908

30 N. LaSalle Street, Suite 1200
Chicago, Illinois 60602
Tel: 312-214-0000· Fax: 312-214-0001

July 15, 2013

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

David G. Leitch, Esq.
Group Vice President and General Counsel
Ford Motor Company
One American Road
Dearborn, Michigan  48126

      **Re:**    *The Center for Defensive Driving, et al. v. Ford Motor Co.*

Dear Mr. Leitch:

      Our law firm represents The Center for Defensive Driving ("Plaintiff") and all others similarly situated (the "Class") in an action against Ford Motor Company ("Ford") arising out of alleged misrepresentations, breaches of warranty, and violations of consumer protection statues with regard to all Ford, Lincoln, and Mercury vehicles equipped with the MyFordTouch, MyLincolnTouch, or MyMercuryTouch infotainment units (the "MyFordTouch Systems").

      Plaintiff and the other members of the proposed Class purchased Ford, Lincoln, or Mercury vehicles equipped with MyFordTouch Systems, unaware that the MyFordTouch Systems fail to function as intended and as Ford represents.  Specifically, the MyFordTouch Systems contain an inherent defect that renders them incapable of functioning as intended and as represented by Ford, leading the MyFordTouch Systems to fail to connect with peripheral devices (including, without limitation, MP3 players and smartphones) and to fail to provide navigational direction, entertainment functions, hands-free telephone use, and the ability to call 911 in emergencies.  At the time of purchase, consumers have no way of knowing that the MyFordTouch Systems are defective.  The full claims, including the facts and circumstances surrounding these claims, are detailed in the enclosed Class Action Complaint ("Complaint").  We intend to amend the Complaint to assert a claim for damages without leave of court under the California Consumer Legal Remedies Act pursuant to Cal. Civ. Code § 1782(d) within 30 days unless Ford takes

GRANT & EISENHOFER P.A.
David G. Leitch
July 15, 2013

corrective actions, as detailed below, and tenders a reasonable offer of settlement of Plaintiff's and the other Class members' claims.

Ford's omissions and false representations to consumers about the MyFordTouch Systems were misleading, constitute unfair methods of competition, and unlawful, unfair, and fraudulent acts or practices undertaken with the intent to induce the consuming public to purchase or lease vehicles equipped with those units. Ford's misrepresentations about the MyFordTouch Systems do not assist consumers; they only mislead them.

Ford's representations violate California Civil Code § 1770(a) under, among other things, the following subdivisions:

> (5) Representing that the [MyFordTouch Systems and vehicles in which those units are installed] have characteristics, uses, and benefits which they do not have.
>
> * * *
>
> (7) Representing that [the MyFordTouch Systems and vehicles in which those units are installed] are of a particular standard, quality or grade, if they are of another.
>
> * * *
>
> (9) Advertising goods . . . with the intent not to sell them as advertised.
>
> * * *
>
> (16) Representing that goods have been supplied in accordance with a previous representation when they have not.

California Civil Code § 1770(a)(5), (7), (9), (16).

Ford's representations and material omissions also constitute violations of California Business and Professions Code § 17200, *et seq*. Furthermore, Ford's actions constitute breaches of express warranty, the implied warranties of merchantability and fitness for a particular purpose, and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of Plaintiff and all others similarly situated, that Ford immediately correct and rectify this violation of California Civil Code § 1770 by ceasing the misleading marketing campaign and ceasing the dissemination of the false and misleading information as described in the enclosed Complaint. In addition, Ford must offer appropriate refunds to all consumers who purchased Ford, Lincoln, or Mercury vehicles equipped with the MyFordTouch Systems, plus interest, costs, and reasonable attorneys' fees.

GRANT & EISENHOFER P.A.
David G. Leitch
July 15, 2013


Plaintiff will, after 30 days from the date of this letter, amend the attached Complaint to include claims for Plaintiff's and the Class' actual and punitive damages (as may be appropriate as permitted by California Civil Code § 1782) available under the Consumers Legal Remedies Act if a full and adequate response to this letter is not received.

Ford must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

1.      Identify or make a reasonable attempt to identify those individuals and entities that purchased or leased any Ford, Lincoln, or Mercury vehicle equipped with the MyFordTouch System;

2.      Notify all such purchasers and lessees so identified that upon their request, Ford will offer an appropriate remedy for its wrongful conduct, which can include a full refund of the purchase price paid for the vehicle, plus interest, costs, and reasonable attorneys' fees;

3.      Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all the Ford, Lincoln, and Mercury vehicle purchasers and lessees who so request; and

4.      Cease from expressly or impliedly representing to consumers that the MyFordTouch Systems are non-defective, as more fully described in the enclosed Complaint.

We await your response.


Yours sincerely,


Adam J. Levitt


Enclosure

cc:      Counsel for Plaintiff (by .pdf email w/o enclosure)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

## CV13- 5068 PSG (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Elaine T. Byszewski (SBN 222304)
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| THE CENTER FOR DEFENSIVE DRIVING | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV13- 5068** PSG(MANx) |
| v. | |
| FORD MOTOR COMPANY | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Elaine T. Byszewski_____, whose address is _301 North Lake Avenue, Suite 203, Pasadena, CA 91101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ **JUL 1 5 2013** _____

By: _____
**JULIE PRADO**
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Elaine T. Byszewski (SBN 222304)
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 203
Pasadena, CA 91101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

THE CENTER FOR DEFENSIVE DRIVING

PLAINTIFF(S)

v.

FORD MOTOR COMPANY

DEFENDANT(S).

CASE NUMBER

CV13-  5068 PSG (MANx)

**SUMMONS**

TO:     DEFENDANT(S):

        A lawsuit has been filed against you.

        Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Elaine T. Byszewski_____, whose address is _301 North Lake Avenue, Suite 203, Pasadena, CA 91101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

        JUL 1 5 2013

Dated: _____

Clerk, U.S. District Court

By: _____
        Deputy Clerk

        (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                    SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

THE CENTER FOR DEFENSIVE DRIVING

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

FORD MOTOR COMPANY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203, Pasadena, CA 91101
Telephone: (213) 330-7150

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No       ☒ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
CAFA, 28 U.S.C. 1332; this nationwide consumer class action arises from Ford's violation of consumer protection statutes and breach of warranties in the sale of Ford, Lincoln, and Mercury vehicles equipped with a "MyFord Touch," "MyLincoln Touch," or "MyMercury Touch" system.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** _____

CV13-5068

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE**: (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of Michigan |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: July 15, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |